## Commonwealth v. Goodwin

*Damian J. McLaughlin*, Assistant District Attorney, for Commonwealth.

*T. P. Dunn*, for defendant.

LAUB, J., October 20, 1959.—On July 11, 1959, defendant, a 16 year old boy, was arrested for operating a motor vehicle upon a public highway without exhibiting registration plates as required by section 401 (*a*) of the Act of April 29, 1959, P. L. 58, 75 PS §401, known as The Vehicle Code. Defendant waived hearing before a justice of the peace and the matter is now before us for disposition.

The facts are not in dispute. The vehicle in question was a fourwheel contraption of the familiar "soapbox" or scooter variety, the principal difference being,

however, that it was equipped with a three-quarter horsepower motor and had a maximum speed of 15 miles an hour. The frame, which was only two inches above the ground, was bolted and welded together and the floor was made of tin. The machine, which was started by pushing, had a steering wheel but no clutch. Defendant concedes that the vehicle was not registered and bore no registration plates at the time of his arrest.

Machines of the type above described have become quite common, many of them being homemade and equipped with old lawn mower or washing machine engines, while still others are manufactured by reputable concerns and marketed in reasonably good condition with new motors attached. The increasing use of such devices by children and others, and the necessity for some definition of such users' rights on the highway constrain us to explore the matter in some detail.

The sole question before us is whether the vehicle operated by defendant was of such a type as to require registration and registration plates as provided for by law. Defendant urges that the machine was essentially a toy, and, as such, was exempt from registration requirements; that The Vehicle Code was not designed or intended to cover anything but the conventional automobile or its counterpart, and that the provision in question being penal in nature, must be strictly construed in the light of the objects desired to be achieved by the statute.

It is essential, of course, to initiate our consideration of the matter by referring to the definition of a motor vehicle contained in section 102 of the code. That section defines a motor vehicle as "Any vehicle, as herein defined, which is self-propelled, except tractors, power shovels, road rollers, agricultural machinery and vehicles which move upon or are guided by a

track, or travel through the air," and includes in Article XIV "trailers and semi-trailers designed for use with such vehicles and vehicles of the tractor type."

From this it can be seen that the vehicle involved here clearly was a motor vehicle within the literal meaning of the language employed, for it was self-propelled and did not fall within one of the named exceptions. However, the words "Any vehicle, as herein defined," led us to explore the other provisions of section 102, in order to determine whether the machine of defendant might be otherwise included or excluded from the terms thereof. Upon further examination we find that the legislature did not ignore the existence of machines of the variety under consideration for we find: "Motorcycle"— "Every motorcycle having a saddle for the use of riders and designed to travel on not more than three (3) wheels in contact with the ground, bicycles with motor attached, *scooter and toy automobiles which are self-propelled by an engine not exceeding four (4) horsepower. . . .*" (Italics supplied.)

Thus, for the purpose of convenience, a scooter or toy automobile having a motor of less than four horsepower is classified by the legislature as a "Motorcycle". This type of arbitrary definition is often essential in a complicated code such as the one in question, for not every provision relating to one class of vehicle can logically be made to apply to another, and it would be cumbersome to insert descriptive words in every section where differences must be made to appear. This is made clear by reference to section 501 relating to the issuance of registration plates for different classes of vehicles; to section 701 et seq. relating to registration fees; to sections 801, 802, 803, relating to lighting equipment and section 816 concerning brakes, in all of which motorcycles receive special attention. From this it can be seen that the legislature, in the interest

of economy of words, provided for the use of the word "motorcycle" in every case where it might also use the words "scooter and toy automobiles which are self-propelled by an engine not exceeding four horse-power."

In the light of the above, it is idle to argue, as defendant does here, that the General Assembly did not intend to place toy automobiles within the scope of The Vehicle Code and that it did not intend to require their registration. Almost from the very beginning of the use of gasoline powered engines, society has wrestled with the problem of wheeled vehicles propelled by mechanical power contained within themselves. Such intruments, when improperly driven or constructed, have always proved dangerous to life, limb and property and, from the turn of the century there have been numerous acts and codes indicative of legislative concern over their use.

Beginning with the vehicle code of 1903 down to the recent detailed and exhaustive code of 1959,[1] the assembly has sought to find some means of curtailing the trail of death, destruction and fantastic personal injury which follows in the wake of motor vehicles on highspeed highways.

One of the regulatory devices common to all codifications in this Commonwealth has been the requirement that each vehicle be registered. While originally registration was adopted only as a means of ascertaining the identity of the vehicle and its driver in case of accident (In re Automobile Acts, 15 Dist. R. 83), it is now employed for an additional and more important purpose. Registration is now required as a means of assuring that each vehicle is properly con-

---

[1] See Act of April 23, 1903, P. L. 268; Act of April 19, 1905, P. L. 217; Act of April 27, 1909, P. L. 265; Act of July 7, 1913, P. L. 672; Act of June 30, 1919, P. L. 678; Act of May 11, 1927, P. L. 886; Act of May 1, 1929, P. L. 905.

structed and equipped, for if such is not the case, the Secretary of Revenue must, under section 411 (4) of The Vehicle Code, refuse to register it. In this manner the question of proper brakes, lighting, and other safety means is initially considered and determined. The proper maintenance of equipment standards subsequent to initial registration is assured through the medium of periodic inspection as provided in other appropriate sections of the act. It follows therefore that the possession and exhibition of registration plates as evidence of proper qualification for use is not a mere formality to be lightly disregarded.

Unless automobiles of the type driven by this defendant be included in the registration and safety requirements of the act, every homemade, flimsy, ill-equipped, self-propelled vehicle devised by the ingenuity of man must be permitted free and uncontrolled use of the highways, turning every public thoroughfare into a hazardous playground and every cautious motorist into a potential killer of children.

Defendant, in his brief, makes no allusion to the definition of a motorcycle mentioned above, contenting himself with arguing that the legislature did not intend to make The Vehicle Code apply to toys and playthings. While obviously such intention is spelled out specifically in the definition mentioned, it might be observed that the legislature frequently finds it necessary to proscribe the sale and use of dangerous toys, playthings and other devices which might be dangerous when adapted for play. Such articles as air rifles and B-B guns,[2] fireworks and firecrackers,[3] acetylene cannons,[4] toy deadly weapons,[5] slingshots, switch-

---

[2] Act of July 10, 1957, P. L. 679.

[3] Act of May 15, 1939, P. L. 134.

[4] Commonwealth v. Bristow, 185 Pa. Superior Ct. 448.

[5] Act of June 24, 1939, P. L. 872, section 627 (The Penal Code).

blade knives [6] and many other potentially dangerous things such as abandoned refrigerators [7] and plastic bags [8] have received legislative attention. To assume, therefore, that there was no intention to include home-made automobiles within the compass of The Vehicle Code merely because they are toys does violence not only to a logical interpretation of the act but to common sense and reason as well. While no one, the legislature included, desires to meddle with a child's instinct for play, it is inescapable that such interference must sometimes occur in the interests of health and safety.

We have no alternative but to conclude that defendant is guilty and to order him to appear for sentence.

And now, to wit, October 20, 1959, defendant is found guilty and directed to appear forthwith for sentence.

---

[6] Act of June 24, 1939, supra, section 416.

[7] Act of May 15, 1939, supra, as amended, 75 PS §699.8. On frequent occasions, children playing around abandoned refrigerators become suffocated by locking themselves inside. The legislature, in an effort to prevent such deaths, has made it a misdemeanor to abandon refrigerators without removing the doors therefrom.

[8] An act has been presented to the current session of the legislature requiring the producers of plastic bags to plainly print a warning thereon as to their inherent dangers. Such proposed legislation was prompted by a wave of suffocations of children caused by placing bags over their heads in play.